IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| V. | * | CRIMINAL NO. W-14-CR-189 (26) |
| | * | |
| VICKI KAY LEVY | * | |

## GOVERNMENT'S ADVISORY TO THE COURT REGARDING THE LEGAL EFFECT OF THE DEFENDANT'S INDICTMENT AND PLEA AGREEMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes the United States of America, by and through the United States Attorney for the Western District of Texas, and files this Advisory to the Court Regarding the Legal Effect of the Defendant's Indictment and Plea Agreement, and would show the Court as follows:

### STATEMENT OF FACTS

On November 10, 2014 a Superseding Indictment charged Vicky Levy and 34 other defendants with Conspiracy to Possess With Intent to Distribute a Mixture or Substance Containing a Detectable Amount of Methamphetamine. The Indictment listed each of the 35 defendants' respective quantity of methamphetamine, under the description: the "quantity of the mixture or substance containing methamphetamine involved in the conspiracy and attributable to each Defendant as a result of each Defendant's own conduct and as a result of the conduct of other conspirators reasonably foreseeable to each Defendant." Levy was charged with the quantity of less than 50g of methamphetamine in violation of 21 U.S.C. §841(b)(1)(C).

Levy entered into a Plea Agreement with the United States of America pursuant to Rule 11(c)(2) of the Federal Rules of Criminal Procedure. Levy agreed to enter a plea of guilty to the Superseding Indictment charging her in Count One with Conspiracy to Possess with Intent to

Distribute a Mixture and Substance Containing a Detectable Amount of Methamphetamine, in violation of 21 U.S.C. § 841(b)(1)(c). In exchange for Levy's guilty plea, the Government agreed to dismiss the Original Indictment against Levy at the time of sentencing.

In Paragraph 3 of the Plea Agreement, the United States Attorney agreed to refrain from prosecuting Levy for other Title 18/21 United States Code Violations of which the Government was aware at the time, which Levy may have committed. That is, this action now pending is the extent of the Federal prosecution against Levy in the Western District of Texas based upon all facts at hand.

In Paragraph 9 of the Plea Agreement, Levy stated that she was

"aware that any sentence imposed can be up to the maximum allowed by statute for the offenses to which Levy is pleading guilty. Levy is also aware that the sentence to be imposed is not subject to parole. By entering into this plea agreement, and as a term of this plea agreement, Levy voluntarily and knowingly waives any right to appeal the sentence on any ground, including any appeal right conferred by 18 USC § 3742, as amended by the *United States v. Booker*, 543 U.S. 220 (2005)."

Additionally, by signing the plea agreement Levy waives all right to challenge the sentence imposed, knowing that the Court has not yet determined the sentence. Levy understands and agrees that any estimate of the probable sentencing range that may be received from defense counsel, the Government, or the United States Probation Office is <u>not a promise</u>, did not induce the guilty plea or this waiver, and does not bind the Government, the United States Probation Office, or the Court. In other words, Levy understands that she may not challenge the sentence imposed by the District Court, even if it differs substantially from any sentencing range estimated by defense counsel, the attorney for the Government, or the United States Probation Officer. Realizing the uncertainty in estimating what sentence Levy will ultimately receive, Levy knowingly and voluntarily waives any rights to appeal the sentence or contest it in any post-conviction proceeding, not specifically reserved herein, in exchange for the concessions made by the

Government in this plea agreement.

Page 4 of the Plea Agreement (as it was listed on the Superseding Indictment) lists the quantity of methamphetamine "involved in the conspiracy and attributable to [Levy] as a result of [Levy's] own conduct and as a result of the conduct of other conspirators reasonably foreseeable to [Levy]." Listed for Defendant Vicki Kay Levy was a quantity of "less than 50 grams."

On December 11, 2014, Levy, along with her attorney Bradford Glendening, signed the Plea Agreement. On April 27, 2015, Levy received her Presentence Report, and was dissatisfied with the amount of methamphetamine (actual) for which she is ultimately held accountable: 562.26 grams. *PSR page 21*. Levy initially faced a base offense level of 34, but this was reduced 2 points for acceptance of responsibility, and further reduced another 1 point for assisting authorities in the investigation. Levy's final base offense level was 31 on the PSR.

On May 6, 2015, Levy, through her attorney Mr. Glendening, filed objections to the Presentencing Report to the amount attributable to Levy for three reasons: "(1) [Levy] was specifically indicted for, and specifically pled guilty to, possessing less than 50 grams of methamphetamine. She is now being held responsible for more than ten times that amount. (2) It violated paragraph 3 of the plea agreement whereby the Government agreed to refrain from prosecuting the defendant for other Title 18 and Title 21 Code violations of which the Government is no aware, which may have been committed by the Defendant in the Western District of Texas. It was the defendant's understanding, for which she relied to her detriment, that the plea agreement precluded the Government from attributing more than 50 grams of methamphetamine to her. She argues she is being held responsible for an amount in excess of 1,000 percent greater than that to which she pled guilty.

On May 13, 2015, the Probation Department responded that although Levy pled guilty to a

violation of 21 U.S.C. § 841 (a)(1) & (b)(1)(C) and 846, which the statute states is less than 50 grams of methamphetamine, the U.S. Probation Office is not precluded from holding the defendant accountable for more than 50 grams of methamphetamine. In fact, Levy benefitted from being charged with a Class C violation because the statutory maximum is 20 years, and not a Class B violation for which she could be facing a minimum mandatory sentence of 5 years or a statutory maximum of 40 years. As to the fact Levy pled guilty pursuant to a written plea agreement, Levy has not been charged with any additional criminal conduct. She is being held accountable for additional drug amounts pursuant to USSG § 1B1, which does not violate the terms of the plea agreement.

## DISCUSSION

The indictment's inclusion of the individual assessment of each defendant's quantity accountability should not preclude the Government from performing its executive responsibilities and pursuing sentences that include greater amounts of methamphetamine than initially listed on the indictment, for several reasons.

First, because the individual assessments of quantity of controlled substances are sentencing factors and not separate elements of the crime of conspiracy, they were not required to be listed on the indictment. Because these individual assessments were not required to be included on the indictment, their inclusion should not have any binding or restrictive effect on the sentencing process. Therefore, the Government should be free to seek punishment for greater amounts of methamphetamine that are later-established, even post-trial.

Second, the separation of powers between the judicial and executive branches requires the grand jury to only determine the existence of probable cause, and not to have any influence upon the executive branch's enforcement of the law subsequent to the issuance of the indictment.

Therefore, the quantity of controlled substances listed in the indictment issued by the grand jury cannot control or restrict in any manner the Government's ability to carry out executive responsibilities in the sentencing process.

Third, the presence of a plea agreement in this case bears no consequence on whether the drug quantity listed on the indictment should restrict the Government's ability to adjust the amount of controlled substances for which a particular defendant may be found accountable upon further investigation. Because Levy was well aware of her rights and options before entering into the agreement, and because the plea agreement merely restated the quantity of controlled substance as listed on the indictment, which has no permeating legal consequence on sentencing, the inclusion of the quantity in the plea agreement should similarly have no binding or restrictive effect on sentencing.

    **I.**     **The Defendant's Individual's Assessment Drug Quantity Listed on the Indictment of Less Than 50 grams of Methamphetamine is a Sentencing Factor, Not a Necessary "Element" as Required by *Alleyne*, Because the Government Does Not Seek Enhanced Penalties.**

Under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, *Apprendi* requires "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 476 (U.S. 2000). While elements of a crime must be charged in an indictment and proved to a jury beyond a reasonable doubt, sentencing factors can still be proved to a judge at sentencing by a preponderance of the evidence. *United States v. O'Brien*, 560 U.S. 218, 224 (U.S. 2010). Additionally, *Apprendi* merely created a new rule of criminal procedure, not a substantive rule that created any new right for defendants. *[Apprendi](), 120 S. Ct. at 2354* ("The substantive basis for New Jersey's enhancement is thus not at issue; the adequacy of New Jersey's procedure is.")

Here, the indictment charged 35 defendants with Conspiracy to Possess with Intent to Distribute a Mixture or Substance Containing a Detectable Amount of Methamphetamine. Here, the indictment contained an individual assessment of the quantity of controlled substance each defendant was charged with given the facts known at the time of the indictment. In this case, the individual assessment of the drug quantity included in the indictment was not an element of the crime, it was a sentencing factor.

In *Doggett,* defendants challenged the constitutionality of treating drug quantities as a sentencing factor rather than as an element of the underlying crime. *United States v. Doggett*, 230 F.3d 160 (5th Cir. Tex. 2000). The Court held that for purposes of 21 U.S.C.S. § 841(b)(1), the quantity of drugs was a fact that should have been submitted to the jury and proved beyond a reasonable doubt because the quantity of drugs increased defendant's penalty beyond the prescribed statutory maximum. *Id.* at 164. Specifically, the Court asserted that:

> "[Section 841](#) clearly calls for a factual determination regarding the quantity of the controlled substance, and that factual determination significantly increases the maximum penalty from 20 years under [§ 841(b)(1)(C)](#) to life imprisonment under [§ 841(b)(1)(A)](#). Therefore, we hold that if the government seeks enhanced penalties based on the amount of drugs under [21 U.S.C. § 841(b)(1)(A)](#) or [(B)](#), the quantity must be stated in the indictment and submitted to a jury for a finding of proof beyond a reasonable doubt." *Id.* at 165.

Implicit in the holding in *Doggett* is that while the government must include the quantity of controlled substances in the indictment when it seeks enhanced penalties, the government is not required to provide individual assessment of quantities when it does not seek enhanced penalties, because the amount of controlled substances in these types of cases are clearly not elements of the crime; the amount of controlled substances attributed to each defendant in this conspiracy case is only a sentencing factor, and therefore not required to be included in the indictment.

Because the quantity of controlled substances is only a sentencing factor, it is not required

6

to be included in the indictment as required by *Alleyne*. In holding that facts that increase mandatory minimum sentences must be submitted to the jury, the Supreme Court took care to note what the *Alleyne* holding does not entail. *Alleyne v. United States*, 133 S. Ct. 2151, 2163 (U.S. 2013). The Court noted that the *Alleyne* holding does not mean that any fact (such as sentencing factors) that influences judicial discretion must be found by a jury. *Id.* Additionally, the Court long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment. See, e.g. *Dillon v. United States*, 560 U.S. 817, 831 (U.S. 2010). Within the limits of any discretion as to the punishment which the law may have allowed, the judge, when he pronounces sentence, may suffer his discretion to be influenced by matter shown in aggravation or mitigation, not covered by the allegations of the indictment. 1 J. Bishop, Criminal Procedure 50, §85 at 54 (2d ed. 1872).

A recent example of these holdings applied to a charge similar to the one in this case came before this Court in *United States v. Ramos.* In *Ramos*, the indictment alleged involvement in a conspiracy to distribute a quantity greater than 500 grams of a substance containing methamphetamine. *United States v. Ramos*, 545 Fed. Appx. 301, 305 (5th Cir. Tex. 2013). Because this charge triggered punishment within the statutory range of 21 U.S.C. § 841(b)(1)(A)(viii), a fourth element applied, i.e., the drug quantity. *United States v. DeLeon*, 247 F.3d 593, 596 (5th Cir. 2001) (citing *United States v. Doggett*, 230 F.3d 160, 164-65 (5th Cir. 2000) ("If the government seeks enhanced penalties under 21 U.S.C. § 841(b)(1)(A) or (B), the [drug] quantity must be stated in the indictment and submitted to the [fact finder] for a finding of proof beyond a reasonable doubt.")). Although the drug quantity in *Ramos* was considered a "fourth element" of the crime, this was only because the government sought enhanced penalties. Here, the government does not seek enhanced penalties, so the amounts listed on the indictment for

7

each individual are not a collective "fourth element" and therefore not required to be listed on the indictment. Because the amounts did not need to be included on the indictment, the government should not be limited, during sentencing, by amounts that were not required to be added.

A second example speaks directly to the issues present in this case, *United States v. Smith.* Linda Faye Hawkins Smith appealed the sentence imposed by the District Court after she pleaded guilty to conspiracy to possess with intent to distribute five or more grams of cocaine base. *United States v. Smith*, 82 Fed. Appx. 950 (5th Cir. La. 2003). Smith argued that under *Apprendi,* the District Court erred in holding her responsible for a larger amount of cocaine base for relevant conduct purposes than the amount alleged in the indictment and found by the jury in her first trial. *Id.* Smith acknowledged that this argument was foreclosed by *United States v. Doggett*, and the Court affirmed her sentence. *Id.* The Court in Smith found that *Apprendi* does not invalidate a sentencing court's factual findings concerning drug quantity for the purposes of determining the applicable Sentencing Guidelines in cases where those findings cause a defendant's guideline range to shift within the statutory range. *Doggett*, 230 F.3d at 166; *United States v. Randle*, 304 F.3d 373, 378 (5th Cir. 2002), cert. denied, 538 U.S. 962, 155 L. Ed. 2d 514, 123 S. Ct. 1748 (2003).

A third example applying the use of drug quantity as a sentencing factor, in a circumstance such as this, is found in *United States v. Daniels.* In *Daniels,* the Government physically seized, and introduced in evidence before the jury, 1.535 kilograms of cocaine. See *United States v. Daniels*, 723 F.3d 562 (5th Cir. La. 2013).The evidence presented did not support a finding that the conspiracy involved five kilograms, and the Government told the jury that it should assume that each controlled purchase bought from a cooperating seller was preceded by a delivery of half a kilogram of cocaine to him and other sellers involved in the conspiracy, but this was not confirmed

by the record. *Id.* The Court found that the failure to prove the five kilogram quantity did not undermine the convictions, but it did affect the sentences. *Id.* Thus resentencing under § 841(b)(1)(B)(ii) was appropriate. *Id.*

Further, the Court held that the "quantity and type" of the controlled substance element is not necessary for a 21 U.S.C.S. § 841(b) conviction, but is relevant only to determine the provision of § 841(b) under which defendants may be sentenced. *Id.* at 573. Additionally, guilt of the substantive offense defined in 21 U.S.C.S. § 841(a) is not dependent upon a determination of the amount or type of narcotics distributed. *Id.* Finally, where a defendant may be subject to enhanced statutory penalties because of drug quantity or type, the requisite fourth "element" under *Apprendi* is not a formal element of the conspiracy offense. *Id.* at 574. Hence, challenges to the quantity of drugs charged in an indictment do not go to the validity of a conviction, but rather to the sentence that the District Court may impose. *Id.*

The holdings in all three of these examples support the finding that the drug quantities listed on the indictment are most appropriately classified as sentencing factors, not determinative of guilt and therefore not elements of the charged crime under *Apprendi* and *Alleyne*. Ultimately, the indictment in this conspiracy case listed 35 defendants and their respective attributable drug quantities, and the total amount of methamphetamine involved in the conspiracy (over 50 grams or over 500 grams) is a "fourth element" that was required to be listed in the indictment and must be proven to a jury beyond a reasonable doubt. However, because each individual assessment of accountability is a sentencing factor, the Government is not bound by the initial amounts listed in the indictment by the grand jury because these amounts were not required to be included in the indictment.

**II.** **Separation of Powers Between the Judicial and Executive Branches Requires the Grand Jury to Only Determine the Existence of Probable Cause, and Not to Have**

**Any Influence upon the Executive Branch's Enforcement of the Law Subsequent to the Issuance of the Indictment.**

The constitutional requirement of an indictment or presentment as a predicate to a prosecution for capital or infamous crimes has for its primary purpose the protection of the individual from jeopardy except on a finding of probable cause by a group of his fellow citizens, and is designed to afford a safeguard against oppressive actions of the prosecutor or a court. *United States v. Cox*, 342 F.2d 167, 170 (5th Cir. Miss. 1965). The constitutional provision is not to be read as conferring on or preserving to the grand jury, as such, any rights or prerogatives. *Id.* The legal effect of restricting the Government during sentencing to the drug quantity listed on the indictment would essentially confer power to the grand jury to affect the sentencing process in a manner that is wholly unconstitutional.

In point of law and reality, the plenary inquisitorial power of the grand jury does not impinge in the slightest upon the executive function of the Attorney General to prosecute offenses against the United States. *Id.* at 178. The grand jury may be permitted to function in its traditional sphere, while at the same time enforcing the separation of powers doctrine as between the executive and judicial branches of the government. *Id.*

For example, the grand jury may issue an indictment, but the United States Attorney may decide not to pursue prosecution. The judicial branch has its own sphere of influence and power to shape proceedings in a profound manner, but places its faith in the executive branch and its exercise of prosecutorial discretion. The executive branch has full discretion, upon a judicial finding of guilt, to introduce facts at sentencing that are not required to be found by a jury beyond a reasonable doubt. Subsequently, the executive branch then entrusts the judicial branch with its discretion during sentencing, which will then arrive at the appropriate sentence for each defendant given a

multitude of factors. The importance of the continued symbiotic relationship between the executive branch and the judicial branch cannot be interrupted by the grand jury limiting both the executive and the judicial branches both before and during sentencing. For the grand jury to have such a continued influence on the prosecution of the case, after trial or guilty plea, on the defendant's sentencing exceeds the powers and responsibilities constitutionally vested to the grand jury.

The potential for restricting judicial discretion during sentencing is similar to the restrictions a Judge would face if he accepted an 11(c)(1)(C) Plea Agreement. As Rule 11 states:

> **(c)** Plea Agreement Procedure.
> **(1)** *In General.* An attorney for the government and the defendant's attorney… may discuss and reach a plea agreement. The court <u>must not participate</u> in these discussions. If the defendant pleads guilty…the plea agreement may specify that an attorney for the government will:
> > **(C)** agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request <u>binds the court</u> once the court accepts the plea agreement).

A Rule 11(c)(1)(C) plea agreement, once accepted by the Court, strips the Judge of his discretion at sentencing to assign an appropriate punishment as he sees fit. Similarly, limiting the Court to only consider the quantity of controlled substances listed in the indictment would restrict the Judge's discretion at sentencing, and impede his ability to sentence individuals according to each unique set of circumstances. Requiring the Court to be limited in such a manner threatens a process that ensures fairness and justice at sentencing, and therefore should not be permitted.

Additionally, the Supreme Court has often recognized the grand jury's <u>singular</u> role in finding the probable cause necessary to initiate a prosecution for a serious crime. *Kaley v. United States*, 134 S. Ct. 1090, 1097 (U.S. 2014) (emphasis added). Further, the Supreme Court has repeatedly emphasized that the grand jury protects the individual by requiring probable cause to

indict. See *United States v. Williams*, 504 U.S. 36, 47, 51, 118 L. Ed. 2d 352, 112 S. Ct. 1735 (1992). The whole theory of the grand jury's function is that it serves as a kind of buffer or referee between the government and the people to assess whether there is adequate basis for bringing a criminal charge. *Id.* The ancient role of the grand jury has the dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions. *Branzburg v. Hayes*, 408 U.S. 665, 686-87, 33 L. Ed. 2d 626, 92 S. Ct. 2646 (1972). And while the grand jury is vested with the responsibility to find probable cause, it is not vested with the power to dictate beyond this initial finding, or to predict potential sentences that a defendant may face.

Upon either a jury's finding of guilt, or a defendant entering a guilty plea, the defendant faces a separate sentencing proceeding. The United States Sentencing Guidelines Manual provides ranges of sentences for judges to consider for certain offenses, but these guidelines are neither binding nor conclusive. The sentencing consequences of guilty pleas (or, for that matter, guilty verdicts) are extraordinarily difficult to predict. *United States v. Barnes*, 83 F.3d 934, 940 (7th Cir. Ind. 1996). Although the sentencing guidelines, if followed, significantly restrict the sentencing discretion of the district courts, that discretion is still extensive, and predicting the exercise of that discretion is an uncertain art. *Id.* Again, that a grand jury's initial enumeration of drug quantity in the indictment could confine the government at sentencing to only the amount listed would result in a violation of fundamental principles embedded in our judicial system.

Sentencing takes place after the compilation of a Presentence Report conducted by the United States Probation Office for each individual defendant, ensuring that each individual is assigned a sentence such that the punishment fits the crime that a certain individual committed. It is widely recognized that first-time offenders may be sentenced differently than repeat offenders or

career-criminals; because certain circumstances raise certain statutorily established sentences to a level that requires a harsher punishment, the necessity for continued flexibility at the sentencing phase cannot be disrupted. For a defendant to weasel out of their appropriate sentence after cries that the initial indictment listed a much lower estimate of drug quantity than later established is a technicality that unduly punishes the Government and prevents justice from being properly served.

   III.   **The Presence of a Plea Agreement in this Case Bears No Consequence on Whether the Drug Quantity Listed on the Indictment Restricts the United States' Ability to Adjust the Amount of Controlled Substances for Which a Particular Defendant May Be Found Accountable Upon Further Investigation of the Same Alleged Behavior.**

When Levy entered into the Plea Agreement, she did not, at any time, make any statement or comment that she thought she would get a certain sentence. In fact, she swore to the opposite. The act of pleading guilty is a serious act and merely allowing Levy to withdraw her plea on a lark because she did not like the recommendations in the Presentence Investigation Report (PSR) would "degrade the otherwise serious act of pleading guilty to something akin to a move in a game of chess." *United States v. Grant*, 117 F.3d 788, 791 (5th Cir. 1997).

Here, Levy has not been prejudicially misled by the plea agreement she knowingly and willingly entered into. Although Levy has expressed her concern at the sentence she now potentially faces, she entered into the plea agreement with full knowledge of the sentencing process and the potential for a greater sentence to be imposed than she hoped. The government never made any indication nor promises that paragraph 3 of the plea agreement limited the sentence Levy faced to only less than 50 grams of methamphetamine, so Levy at no point could have been reasonably under the impression that government had abandoned its efforts to pursue a sentence of an amount greater than 50 grams.

Independent of the agreement that she signed, Levy had a colloquy with the Court about

her understanding of the guilty plea and its effect. First, the Court asked Levy if she received a copy of the indictment and understood the charges she faced, as well as the maximum punishment of 20 years associated with her charges. Levy responded that she understood the possible punishments she faced. Specifically, the Court discussed directly with Levy, to which she attested she understood:

> "If you continue in your guilty plea and I accept your guilty plea, you will waive your right to a trial and all those other rights I just discussed. There will be no further trial, and I will enter a judgment of guilty and sentence you on the basis of your guilty plea after considering a presentence report."

Second, the Court described exactly how punishment is determined, and described the Probation Office's role in preparation of the Presentence Report and subsequent recommendation for the sentencing range. The Court informed Levy that despite the recommended range, the Judge would not be bound by that recommendation, and would have the right to sentence that person to a shorter sentence if he thought that was appropriate, or a longer sentence if he thought that was appropriate. Levy confirmed that she understood how the method of determining punishment essentially works. Finally, Levy affirmed that no one had made any predictions, prophecy or promise to her exactly what her sentence will be.

Additionally, given the nature of a conspiracy charge, Levy faces not only the amount of methamphetamine for which she is personally responsible as a result of her own conduct, but the reasonably foreseeable amount attributable to her co-conspirators' conduct. As established in *Pinkerton,*

> Participation in an offense committed by another may be established by proof that he conspired with such other to commit it, where the conspiracy was continuous and there is no evidence of withdrawal from it; though such is not the case if the substantive offense committed by the coconspirator was not in fact done in furtherance of the conspiracy, did not fall within the scope of the unlawful project, or was merely a part of the ramifications of the plan which could not be reasonably foreseen as the necessary or natural consequence of the unlawful agreement.

14

*Pinkerton v. United States*, 328 U.S. 640, 645 (U.S. 1946).

The very nature of the crime which Levy is charged acknowledges that while initially Levy was personally assigned less than 50 grams, she still faced responsibility for amounts attributable to the reasonably foreseeable conduct of her co-conspirators.

## CONCLUSION

Because the individual assessment of quantity of controlled substances is a sentencing factor and did not need to be included on the indictment, and because the quantity indicated on the indictment issued by the grand jury has no permeating binding on sentencing, the quantity listed on the indictment should not restrict the Government from pursuing the appropriate sentence as determined by the usual process of obtaining a presentence report. The potential impact of allowing the Government to be restricted to the drug quantity listed on the indictment would detrimentally impact the Government's ability to perform its constitutionally mandated executive powers and responsibilities. The indictment and plea agreement in this case have no legal effect on nor limit upon the penalty range of up to twenty years incarceration Levy faces at sentencing.

    Respectfully submitted,

    RICHARD L. DURBIN, JR.
    ACTING UNITED STATES ATTORNEY

    /s/ *Mark L. Frazier*

By:    MARK L. FRAZIER
    Assistant United States Attorney
    800 Franklin, Suite 280
    Waco, TX 76701
    (254) 750-1580

CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of June, 2015, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF System which will transmit notification of such filing to the following CM/ECF participant:

Bradford J. Glendening
Attorney at Law

                        /s/ *Mark L. Frazier*
By:   MARK L. FRAZIER
       Assistant United States Attorney